**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 96-60752
Summary Calender

_____


PETER BROWN,

                                        Petitioner-
                                        Cross-Respondent,

              VERSUS

        BURNSIDE TERMINAL,
    A Division of Ormet Corporation,

                                        Respondent-
                                        Cross-Petitioner,

        CRAWFORD & COMPANY, DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR,

                                        Respondents.


_____

Petition for Review of an Order
of the Benefits Review Board
(95-1710A)
_____
July 10, 1998


Before JONES, SMITH, and STEWART, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]



        Peter Brown and his employer, Burnside Terminal ("Burnside"),

_____

        [*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

petition for review of an affirmance by the Benefits Review Board ("BRB") of a workers' compensaton award by an administrative law judge ("ALJ") under the Longshore and Harbor Workers Compensation Act ("LHWCA"), 33 U.S.C. § 901 *et seq.* Finding no reversible error, we deny the petition for review.

## I.

Brown, a longshoreman, was injured on July 3, 1990, while loading barges for Burnside. Attempting to jump onto a barge, he slipped and ruptured his Achilles tendon and was immediately sent to the company physician, who referred him to an orthopedic specialist, Dr. W. Joseph Livingston, who performed surgery on Brown's ankle and treated him for several months.

In June 1991, Livingston concluded that Brown had reached "maximum medical improvement," or "MMI." He set the date of MMI at March 7, 1991, finding that, as of that date, Brown had made as full a recovery as he ever would; thereafter, he would suffer from a permanent partial disability of five percent to his right leg.

Brown then sought treatment from Dr. Harry Hoerner, who treated Brown on four occasions: July 2, 1991, July 29, 1991, September 23, 1991, and November 25, 1991. Although Hoerner testified that there was no significant improvement in Brown's condition during the period he had treated him, he set the date of MMI as his last treatment date, November 25, 1991. Horner also

concluded that Brown would suffer from a permanent partial disability of the foot of between ten and fifteen percent.

## II.

### A.

The ALJ considered the testimony of both doctors and credited Livingston's determination of the MMI date as March 7, 1991. The ALJ also decided that Burnside had successfully rebutted Brown's *prima facie* case that Brown was totally disabled. Although Brown could not return to his former position, there did exist other jobs within his geographical area that he could obtain given the permanent partial impairment.

The ALJ thus moved to the schedule of benefits provided under 33 U.S.C. § 908(c) for permanent partial disabilities. Ascertaining the amount of the permanent partial disability proved problematic, however. Although the ALJ evidently found Livingston more credible than Hoerner, he found Livingston's evaluation that Brown had suffered a five percent *leg* injury troublesome in light of the relevant law, as the injury had affected only Brown's calf and ankle.

Under existing BRB caselaw, an amputation below the knee is counted as a foot, rather than a leg, injury for purposes of

3

§ 908(c). The ALJ believed this caselaw controlling and therefore found Livingston's testimony on the percentage of disability inapposite. With only Hoerner's testimony remaining, the ALJ averaged Hoerner's estimate of a "ten to fifteen percent" impairment of the foot to achieve a 12½% impairment, then he calculated the amount of LHWCA schedule benefits.

## B.

Both parties appealed to the BRB, which failed to act within the statutory time period. *See* Omnibus Appropriations Act for Fiscal Year 1996, Pub. L. No. 104-134, 110 Stat. 1321. As a result, the ALJ's decision was summarily affirmed. *See id.*

## III.

Both sides now petition for review. Brown contends that Congress's provision for summary affirmance of long-outstanding BRB petitions violates his vested due process rights to have BRB review of his claims. Second, he argues that the ALJ erred in finding that Burnside had successfully rebutted his *prima facie* case of total disability. Finally, he avers that the ALJ erred in rejecting Hoerner's MMI finding of November 25, 1991.

Burnside cross-petitions, contending that the ALJ incorrectly adopted Hoerner's finding of a 12½% foot disability. Burnside also contests the ALJ's award of attorney's fees to Brown.

A.

Brown's constitutional argument concerning Congress's provision for summary affirmance of his BRB petition has recently been addressed and rejected by this court. *See Hall v. Consolidated Employment Sys., Inc.*, No. 96-60754, 1998 U.S. App. LEXIS 8176 (5th Cir. Apr. 24, 1998). We therefore reject Brown's constitutional challenge.

B.

In reviewing a BRB order, we evaluate the ALJ's factual findings under a substantial evidence standard. *See, e.g., Ceres Marine Terminal v. Director, Office of Worker's Compensation Programs*, 118 F.3d 387, 389 (5th Cir. 1997). Substantial evidence is that relevant evidenceSSmore than a scintilla but less than a preponderanceSSthat would cause a reasonable person to accept the finding of fact. *See, e.g., Polanco v. City of Austin*, 78 F.3d 968, 974 (5th Cir. 1996). Because the fact-finder is entitled to deference, a reviewing body cannot substitute its own view of the facts for the ALJ's. *See Ceres*, 118 F.3d at 389. Thus, our "only function is to correct errors of law and to determine if the BRB . . . deferred to the ALJ's fact-finding . . . ." *Avondale Shipyards, Inc. v. Vinson*, 623 F.2d 1117, 1119 n.1 (5th Cir. 1980); *accord Ceres*, 118 F.3d at 389. Because the BRB failed to act in this case, we look directly to the ALJ proceedings.

5

A claimant, who bears the ultimate proof of showing disability under the LHWCA, makes a *prima facie* case of a total disability by showing that he cannot return to his usual employment because of an employment-related injury. *See New Orleans (Gulfwide) Stevedores v. Turner*, 661 F.2d 1031, 1038 (5th Cir. Unit A Nov. 1981). The employer then can rebut the *prima facie* case by showing the existence of suitable other employment opportunities in the relevant geographical area for which the claimant can compete. *See id.* We assume that Brown has properly made a *prima facie* case of total disability.

Although Burnside put forth several other possible positions for which Brown could compete for employment, Brown contests the ALJ's adoption of Burnside's evidence, because he believes that the ALJ failed to give articulable reasons for the basis of his decision as required under the Administrative Procedures Act ("APA"). Although the ALJ issued a ten-page, single-spaced order in which he gave reasons for the rejection of Brown's claim of total disability, Brown suggests that all of those reasons are invalid, and thus none remains to support the decision for purposes of the APA.

We have previously held that the substantial evidence standard, under which we review an ALJ's LHWCA findings of fact, was not changed by the APA. *See Young & Co. v. Shea*, 404 F.2d

1059, 1061 (5th Cir. 1968) (on petition for rehearing). The relevant question, therefore, is whether the evidence is such that a reasonable person could accept the ALJ's finding that Brown could compete for the employment positions put forward by Burnside. *See Polanco*, 78 F.3d at 974.

The standard of review is met. Although some of the ALJ's reasons in this regard may, as Brown notes, be irrelevant as a matter of law, in the end there is enough relevant evidence that a reasonable fact-finder could conclude that Brown could compete for the positions put forward by Burnside and thus is not totally disabled under the LHWCA.[1]

2.

The ALJ's determination of MMI is also supported by substantial evidence. The ALJ was entitled to credit Livingston's testimony and to discredit Hoerner's. Livingston testified that Brown ceased medical improvement on March 7, 1991. Given the problematic nature of Hoerner's testimony on this point,[2] the ALJ was well within reason to find March 7, 1991, as the date of MMI.

---

[1] Brown does not attempt to overcome Burnside's rebuttal by, for instance, contending that he tried unsuccessfully to obtain or hold one of these positions.

[2] Hoerner began seeing Brown in July 1991. He testified that there was no significant improvement in Brown's condition from then until he last treated him in November 1991. Hoerner's testimony, therefore, undercuts his conclusion that the November 1991 date was the true date of MMI. More likely, MMI occurred before Brown began seeing Hoerner in July 1991SSlending credence to Livingston's conclusion that March 7, 1991, was the date of MMI.

We also reject Burnside's cross-petition contesting the ALJ's finding of a 12½% permanent foot impairment.[3]  Livingston's testimony concerning Brown's *leg* disability was rendered irrelevant by the applicable BRB caselaw dictating that Brown's was a foot, rather than a leg, injury.  Having only Hoerner's uncontested testimony concerning the extent of the foot impairment, the ALJ quite rationally adopted the average of the range of impairment that Hoerner had provided in his testimony.

4.

Burnside's attorneys' fees challenge is rendered moot by our decision above.  Burnside's argument on this issue depends on its assumption that Brown would be unsuccessful in obtaining additional relief from the ALJ and from this court.  As we have just determined that the ALJ did not err in finding that Brown had suffered a 12½% permanent partial foot disability, we need not address Burnside's cross-petition on this issue.

The petition and cross-petition for review are DENIED.

---

[3] Burnside does not contest the BRB jurisprudence that dictates that Brown's injury be counted as a foot rather than a leg injury for purposes of the LHWCA § 908(c) schedule.  Instead, in its brief, it attempts to recharacterize Livingston's testimony concerning a 5% permanent disability as relating to the foot rather than to the leg.  The ALJ could reasonably decide to take Livingston at his word and conclude that when the doctor said "leg," he really meant "leg" rather than "foot."